

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-24-2002

# Santa Marie v. McGreevey

Precedential or Non-Precedential: Precedential

Docket No. 01-1068

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Santa Marie v. McGreevey" (2002). *2002 Decisions.* Paper 806.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/806

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed December 24, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 01-1068 & 01-1461

DONNA S. MARIE, (a fictitious name of a real individual),
individually, on her own behalf, and on behalf of all
women similarly situated; Donna Santa Marie, on behalf
of her own child and all others similarly situated;
TERESA H. JIMENEZ, on behalf of herself and on behalf
of her patients [both mothers carrying children and the
children themselves], and all other children similarly
situated; JANE JONES, (a fictitious name of a real
individual), individually, on her own behalf, and on behalf
of all women similarly situated; JANE JONES, on behalf
of her own child and all other individuals similarly
situated; MARY DOE, (a fictitious name of a real
individual), individually, on her own behalf, and on behalf
of all women similarly situated; MARY DOE, on behalf of
her own child and all other individuals similarly situated;
MYRANA GUERRA-DeLUNA, M.D., on behalf of herself,
and on behalf of her patients [both mothers carrying
children and the children themselves] and all women and
children similarly situated,
          Appellants

v.

*JAMES E. McGREEVEY, Governor of the State of New
Jersey in his official capacity; MEMBERS OF THE NEW
JERSEY BOARD OF MEDICAL EXAMINERS; JOSEPH
GLUCK; JUDITH I. GLEASON; VERONICA E. DESMOND;
GLENN A. FARRELL; DANIEL WEISS; ARTHUR W. PERRY,
M.D.; BERNARD ROBINS, M.D.; MICHAEL T. CHEN,
M.D.; KAREN C. CRISS, C.N.M.; ARGANEY L. LUCAS,
JR., M.D.; CLIFTON LACY, M.D.; BASSAM HADDAD,

M.D.; DONALD C. HUSTON, JR., D.O.; WILLIAM V.
HARRER, M.D.; GHIAS MOUSSA, M.D.; GREGORY J.
ROKOSZ, D.O.; JAMES C. RICKETTI, D.P.M.; MANMOHAN
PATEL, M.D.; KEVIN P. WALSH; KELLY REID, M.D.;
EDWIN TRAYNER, M.D.; DAVID WALLACE, M.D., in their
capacity as members of the New Jersey Board of Medical
Examiners, and their successors in office; JOSEPH P.
BRENNAN, JR., Surrogate Essex County; DIANE
GEROFSKY, Surrogate of Mercer County; KEVIN J.
HOAGLAND, Surrogate of Middlesex County; DAVID
SAMSON, Attorney General of the State of New Jersey, in
his official capacity and his successors in office

(*Amended per Court order dated 11/6/02)

On Appeal from the United States District Court

for the District of New Jersey
D.C. Civil Action No. 99-cv-02692
(Honorable Garrett E. Brown, Jr.)

Argued June 4, 2002

Before: SCIRICA, BARRY and WEIS, Circuit Judge s

(Filed: December 24, 2002)

HAROLD J. CASSIDY, ESQUIRE
 (ARGUED)
Cassidy Messina & Laffey
961 Holmdel Road
Holmdel, New Jersey 07733

THOMAS F. SHEBELL, JR.,
 ESQUIRE (ARGUED)
Shebell & Shebell
1398 Highway 35 South
Ocean City, New Jersey 07712

 Attorneys for Appellants

PATRICK DeALMEIDA, ESQUIRE
 (ARGUED)
Office of Attorney General of
 New Jersey
Department of Law & Public Safety
Richard J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625

 Attorney for Appellees,
James E. McGreevey, Governor of
the State of New Jersey; Joseph
Gluck; Judith I. Gleason; Veronica
E. Desmond; Glenn A. Farrell;
Daniel Weiss; Arthur W. Perry,
M.D.; Bernard Robins, M.D.;
Michael T. Chen, M.D.; Karen C.
Criss, C.N.M.; Arganey L. Lucas,
Jr., M.D.; Clifton Lacy, M.D.;
Bassam Haddad, M.D.; Donald C.
Huston, Jr., D.O.; William V.
Harrer, M.D.; Ghias Moussa, M.D.;
Gregory J. Rokosz, D.O.; James C.
Ricketti, D.P.M.; Manmohan Patel,
M.D.; Kevin P. Walsh; Kelly Reid,
M.D.; Edwin Trayner, M.D.; David
Wallace, M.D.; David Samson,
Attorney General of the State of
New Jersey

ROBERT C. SCRIVO, ESQUIRE
Office of County Counsel
County of Essex

465 Martin Luther King Boulevard
Hall of Records, Room 530
Newark, New Jersey 07102

 Attorney for Appellee,
Joseph P. Brennan, Jr., Surrogate
Essex County

3

RICHARD C. WILLIAMS, JR.,
 ESQUIRE
Office of County Counsel
County of Mercer
McDade Administration Building
640 South Broad Street
Trenton, New Jersey 08650

 Attorney for Appellee,
Diane Gerofsky, Surrogate of
Mercer County

BENJAMIN D. LEIBOWITZ,
 ESQUIRE
Office of County Counsel
Middlesex County
1 John F. Kennedy Square,
 Room 230
New Brunswick, New Jersey 08903

 Attorney for Appellee,
Kevin J. Hoagland, Surrogate of
Middlesex County

ROBERT J. MUISE, ESQUIRE
Thomas More Center for Law
 & Justice
3475 Plymouth Road, Suite 100
Ann Arbor, Michigan 48105

 Attorney for Amicus Curiae-
Appellant, The Thomas More
Center for Law & Justice

OPINION OF THE COURT

PER CURIAM.

In this constitutional challenge, certain women who have
had abortions allegedly without giving informed consent
contend that denial of their right to recover damages under
New Jersey's Wrongful Death Act violates the Equal
Protection and Due Process clauses of the Fourteenth
Amendment. We have previously rejected such a claim,

4

Alexander v. Whitman, 114 F.3d 1392 (3d Cir. 1997), and

accordingly will affirm the District Court's dismissal under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs may have legal recourse in the nature of a damages claim under New Jersey law, an issue they have not raised here.

I.

The principal plaintiffs are women who have had abortions in New Jersey allegedly without their informed consent. They seek to sue their doctors for purported wrongful abortions under the New Jersey Wrongful Death Act, N.J. Stat. Ann. S 2A:31-1. They contend that in not permitting recovery of damages for the wrongful death of a fetus in the womb, the New Jersey law violates their equal protection rights. They also contend that New Jersey law, in failing to require what plaintiffs view as adequate consent, and in "affirmatively protecting" doctors who perform abortions, violates the equal protection and due process rights of women who have had abortions.

Two obstetricians are also named plaintiffs. They claim direct damages and seek third-party standing to represent the interests of their patients. Their direct claims are unclear, but appear to be primarily in the nature of lost business due to their refusal to offer abortion-related services, and due to the early termination of their patients' pregnancies. Because the doctor's claims are ultimately derivative of the violations alleged by the mother plaintiffs, we will direct our attention to the women's claims. 1

Defendants are New Jersey state and county officials and members of the New Jersey State Board of Medical Examiners.

Each of the women plaintiffs contends she had an abortion without fully understanding the nature of the procedure. At least one plaintiff claims to have been threatened and coerced into having an abortion. Because this is an appeal of a dismissal under Rule 12(b)(6), we

_____

1. Plaintiffs also seek class certification of individuals similarly situated to both groups of named plaintiffs. The District Court dismissed plaintiffs' complaint without reaching this issue.

5

must accept plaintiffs' allegations as true. Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc. , 296 F.3d 164, 168 (3d Cir. 2002). These allegations would seem to give rise to certain state-law causes of action. Women who believe they submitted to abortions without informed consent may be able to sue for damages under New Jersey law. See Acuna v. Turkish, 808 A.2d 149 (N.J. Super. Ct. App. Div. 2002). But plaintiffs here assert only federal constitutional claims under the equal protection and due process clauses, and under 42 U.S.C. SS 1983 & 1988.

II.

a.

Plaintiffs' central argument is that the women have been
discriminated against in being denied the ability to recover
damages in a wrongful death action on behalf of their
aborted fetuses under New Jersey law.2  This challenge is
precluded by our opinion in Alexander v. Whitman , 114
F.3d 1392 (3d Cir. 1997).

The wrongful death action is a creation of statute. 3 It
permits certain persons--generally family members--to
bring a tort action against a person who tortiously caused
the death of another. Wrongful death is "in essence . . . a
derivative action based on the harm done to the decedent,

_____

2. In the district court, plaintiffs raised a parallel argument under the
New Jersey survival law, but in this court have focused their arguments
on wrongful death. The issues at stake appear to be the same in both
instances.

3. The New Jersey Wrongful Death Act provides:

> When the death of a person is caused by a wrongful act, neglect or
> default, such as would, if death had not ensued, have entitled the
> person injured to maintain an action for damages resulting from the
> injury, the person who would have been liable in damages for the
> injury if death had not ensued shall be liable in an action for
> damages, notwithstanding the death of the person injured and
> although the death was caused under circumstances amounting in
> law to a crime.

N.J. Stat. Ann. S 2A:31-1.

6

and is thus differentiated from personal injury actions
brought by the decedent prior to death, or by survivors
resulting from injuries they directly suffered due to the
wrongful death." Giardina v. Bennet, 545 A.2d 139, 145
(N.J. 1988).

The derivative nature of the cause of action requires an
assessment of the rights of the "person injured." N.J. Stat.
Ann. S 2A:31-1. The New Jersey Supreme Court has ruled
that fetuses are not persons for purposes of this statute, so
they cannot be "person[s] injured." Giardina, 545 A.2d at
143. It necessarily follows that their parents cannot recover
under the statute on their behalf. "[T]he Wrongful Death
Act does not permit recovery attributable to the wrongful
death of an infant before birth." Giardina , 545 A.2d at 139;
Acuna, 808 A.2d at 151 (no wrongful death action for
abortion without consent). A parent may, however, recover
for the wrongful death of a child who is injured prenatally,
and dies from those injuries after birth. Giardina, 545 A.2d
at 146 n.2 (following Smith v. Brennan, 157 A.2d 497 (N.J.
1960)).

Under Giardina, fetuses are not "persons" for purposes of the Wrongful Death Act. Therefore, plaintiffs are unable to recover under the Wrongful Death Act on behalf of their fetuses, even if they were wrongfully aborted. 545 A.2d at 143. But parents may still have a cause of action. In Giardina, the court expressly recognized "a valid cause of action for the emotional injuries suffered by parents in this kind of a case." Id. at 143; see also Acuna, 808 A.2d at 155-56 (recognizing Giardina action for wrongful abortions). The parents' own loss, therefore, may be compensable, but they are precluded under New Jersey law from bringing a derivative wrongful death action on behalf of their fetuses.

Plaintiffs contend the distinction between fetuses injured in the womb who die before birth (including aborted fetuses), and fetuses injured in the womb who die after live birth, violates the Equal Protection Clause of the Fourteenth Amendment. They do not argue the statute violated the equal protection rights of the fetuses, because "the word 'person,' as used in the Fourteenth Amendment, does not include the unborn." Roe v. Wade, 410 U.S. 113, 158 (1973). The Supreme Court has held the unborn do not

have rights under the Equal Protection Clause. Id. Instead, plaintiffs contend the statute impermissibly treats mothers of live-born babies and mothers of aborted fetuses as separate classes. In other words, mothers of fetuses that do not survive birth, including aborted fetuses, are unjustly discriminated against.

This general argument was made in--and rejected by-- this court previously. In Alexander, plaintiffs challenged the New Jersey Wrongful Death Act on essentially the same grounds. That case involved not abortion, but alleged negligence that led to a stillbirth. Plaintiffs' central contention, however, is the same and they repeat many of the same arguments rejected in Alexander. We held in Alexander that New Jersey's Wrongful Death Act did not, as a general matter, violate the Equal Protection Clause by classifying women according to whether their children survived birth. 114 F.3d at 1408. That holding is dispositive here.

In Alexander and again here, plaintiffs assert that the challenged classification must be assessed under a strict scrutiny standard,4 because it involves fundamental

---

4. The Supreme Court has stated that "classifications affecting fundamental rights are given the most exacting scrutiny." Clark v. Jeter, 486 U.S. 456, 461 (1988) (citation omitted); see also Harper v. Va. State Bd. of Elections, 383 U.S. 663, 672 (1966); Carrington v. Rash, 380 U.S. 89 (1965); Reynolds v. Sims, 377 U.S. 533, 561-62 (1964); Baker v. Carr, 369 U.S. 186 (1962). But it is unclear what constitutes a "fundamental right," and what relationship a classification must stand in relation to that right to "affect" it for these purposes.

Plaintiffs contend the proposition that the parent/child relationship is protected by strict scrutiny under the Equal Protection Clause is established by several Supreme Court cases. In Levy v. Louisiana, 391 U.S. 68 (1968), and Glona v. American Guarantee & Liability Insurance Co., 391 U.S. 73 (1968), the Court struck down state wrongful death statutes that conditioned the right of recovery, in part, on the legitimacy of the children involved, either as decedents or as survivors. The Court later struck down a workers' compensation statute that gave lesser rights of recovery to illegitimate children. Weber v. Aetna Cas. & Sur. Co., 406 U.S. 164 (1972). Plaintiffs contend these cases applied strict scrutiny, and did so because of the importance of the relationship between parent and child.

parental rights, and cannot be justified by any compelling state interest. But we found that, whether or not strict scrutiny applied to such cases, it did not apply there, because "[i]t is not the relationship that is affected . . . , it is the ability to recover for the loss of that relationship." 114 F.3d at 1404.

Plaintiffs contend Alexander is distinguishable because it involved a negligence claim rather than an intentional wrongful act on the part of the doctor who performed the abortion. But the New Jersey Wrongful Death Act does not affect the parent/child relationship in this case any more than it did in Alexander. As the Supreme Court has stated, "It cannot seriously be argued that a statutory entitlement to sue for the wrongful death of another is itself a 'fundamental' or constitutional right." Parham v. Hughes, 441 U.S. 347, 358 n.1 (1979). In Alexander, we considered and rejected plaintiffs' argument that the need to deter wrongful deaths established that parent/child relationships were sufficiently affected. 114 F.3d at 1404. As in Alexander, the District Court was correct to apply rational relationship review to the statute. And following Alexander, the District Court was correct in finding the classification bears a rational relationship to a legitimate state interest.5

_____

But the Court did not apply strict scrutiny in any of these cases. Instead, the Court applied intermediate scrutiny, and did so because of the issue of illegitimacy, not because of effect on the parent/child relationship itself. See Clark, 486 U.S. at 461 ("Between these extremes of rational basis review and strict scrutiny lies a level of intermediate scrutiny, which generally has been applied to discriminatory classifications based on sex or illegitimacy."); Alexander, 114 F.3d at 1405 ("[T]he interest at issue in each of those cases was the classification of the child's legitimacy, and the inability of both parent and child to reverse the burdens imposed by illegitimacy.") (internal quotation omitted); Brian B. v. Pa. Dept. of Ed. , 51 F. Supp. 2d 611, 621 (E.D. Pa. 1999) (citing Weber for the proposition that illegitimacy classifications are subject to intermediate scrutiny). The cases cited by plaintiffs do not support their argument that strict scrutiny should apply.

5. In Alexander, we stated, "One cannot seriously argue that New Jersey has no interest in defining who is entitled to recover for injuries and in

The present case, in other words, is governed by our holding in Alexander.6See also Acuna, 808 A.2d at 153 (Alexander applied in abortion case).

b.

Plaintiffs also contend their rights were violated by New Jersey law's "affirmative protection" of doctors performing wrongful abortions. They argue these protections violate their equal protection and due process rights. Because this claim, on its face, is more easily understood as a due process claim, we will analyze it as such.

As far as we can tell, plaintiffs' argument is that doctors in New Jersey regularly perform abortions without the informed consent of their patients. Under plaintiffs' view, state law protects these doctors by endorsing a scheme of inadequate consent. Thus, the state acts (in concert with the doctors) to violate women's right to autonomously control their reproduction. This failure to protect women, by protecting wrongful actions by doctors, allegedly amounts to a violation of women's due process rights.7

_____

setting limits on tort recovery for wrongful death." 114 F.3d at 1406. The limits set by New Jersey were justified by problems of proof and the advantages of a bright-line rule. Id. These are legitimate interests rationally related to the challenged classification. Furthermore, wrongful death actions are derivative ones focused on the wrong done to the victim.
6. Plaintiffs also contend their equal protection rights were violated because their protections compare unfavorably with parents who have relinquished their parental rights in adoption, under a state scheme that ensures the relinquishment is made knowingly and voluntarily. In both situations, plaintiffs contend the parents' decisions amount to a waiver of their fundamental constitutional right to relationships with their children. New Jersey's failure to provide a similar scheme, they maintain, is unconstitutional. But adoption and abortion are different in several respects, many of which would provide a rational basis for differing consent requirements.

7. In order to remedy these alleged violations, plaintiffs request: a general declaration that New Jersey's criminal and civil laws protecting abortion rights violate due process and equal protection; a declaration that every human being, including fetuses, "enjoys protection under the Equal Protection Clause of the Fourteenth Amendment"; and entry of an injunction requiring New Jersey regulations to "require the express recognition of the child as a human being," among others.

We do not understand plaintiffs to contend New Jersey affirmatively protects doctors who perform abortions without consent, where consent is understood in its ordinary sense. Instead, they contend consent requirements

should include informing the pregnant woman that"her child is already in existence," that her fetus is a "complete, separate . . . unique" human being; and that her child, if eight weeks or older, may feel pain. The woman should also be required to view a sonogram and listen to the child's heartbeat, according to plaintiffs.

What is required for consent under New Jersey law is not fully settled. See Acuna, 808 A.2d at 157 (declining to "address these perplexing issues" prior to development of factual record). In any event, we see no basis for a due process violation. Whatever the particulars of New Jersey law, the Constitution does not require that New Jersey mandate the heightened consent requirements urged by plaintiffs. If plaintiffs believe the informed consent laws in New Jersey are inadequate, they can petition their elected representatives in the New Jersey legislature for redress, or continue to seek relief in the courts under New Jersey law.8

For the foregoing reasons, we will affirm the judgment of the District Court.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

---

8. In Acuna, the New Jersey Appellate Division said, "both parties have agreed that it is premature to define what duty of care is owed by a physician in this context. The parties also rightly agree that we should not, at this posture of the case, address the fact-sensitive issues concerning what dangers incident to, or consequences resulting from, such a procedure would be 'material' to the 'prudent patient.' Both parties concur that a resolution of these issues should await a complete factual record." 808 A.2d at 157.

11