FORT WORTH OSTEOPATHIC HOS-
PITAL, INC., d/b/a/ Osteopathic Medi-
cal Center of Texas, Craig Smith,
D.O., and Reid Culton, D.O., Petition-
ers,

v.

Tara REESE and Donnie Reese, Individ-
ually and as Legal Representatives of
the Estate of Clarence Cecil Reese,
Respondents.

No. 02–1061.

Supreme Court of Texas.

Argued Oct. 8, 2003.

Decided Aug. 27, 2004.

Rehearing Denied Dec. 3, 2004.

ful death and survival damages. This case presents the new issue of whether foreclosing this claim denies such plaintiffs and their unborn fetuses their constitutional right to equal protection of the laws. Because we conclude that the Legislature's decision to exclude such claims is not unconstitutional, we hold that the court of appeals erred in concluding that the Equal Protection Clause guarantees parents the right to bring a wrongful death or survival claim for a stillborn child. 87 S.W.3d 203, 205.

We also must decide whether the mother in this case raised a fact issue on her own claim for medical malpractice. We hold that the court of appeals correctly reversed the trial court's summary judgment, which prohibited the mother from maintaining her own cause of action for mental anguish. *Id.* We therefore reverse the judgment of the court of appeals in part, affirm in part, and remand to the trial court for further proceedings in accordance with this opinion.

Robert Neal McGehee, Brian J. Brandstetter, R. Bruce Moon, Gwinn & Roby, Craig M. Price, E. Earl Harcrow, Karen D. Williams, Haynes and Boone, LLP, Fort Worth, for Petitioner.

Bernard R. Suchocki, Scott A. Cummings, Jerry D. Bullard, Suchocki Bullard & Cummings, P.C., Fort Worth, for Respondent.

Chief Justice PHILLIPS delivered the opinion of the Court, in which Justice HECHT, Justice OWEN, Justice O'NEILL, Justice JEFFERSON, Justice WAINWRIGHT and Justice BRISTER joined.

We again address whether parents of a stillborn child can sue for statutory wrong-

I

Tara Reese went to the Fort Worth Osteopathic Medical Center emergency room in her seventh month of pregnancy, complaining of a racing pulse and dizziness. Doctors determined that she had a high pulse rate and high blood pressure and sent her to the labor and delivery room for further observation. On multiple occasions through the course of the evening, doctors monitored the heart tones of the fetus, which were often difficult to detect. The following morning the doctors confirmed that the fetus would be stillborn.

Tara and her husband, Donnie Reese, brought suit against Fort Worth Osteopathic Hospital, Osteopathic Family Medicine Clinics, Craig Smith, D.O., Roberta

Beals, D.O., Reid Culton, D.O., and John Chapman, D.O. (health care providers), for negligence, gross negligence, and vicarious liability, seeking damages under the wrongful death and survival statutes and for personal injuries to Tara Reese. The trial court granted summary judgment in favor of all health care providers. The Reeses appealed all claims except that against Dr. Chapman. The court of appeals affirmed the summary judgment disposing of Donnie Reese's individual bystander claim, but reversed the remainder of the summary judgment, remanding the case to the trial court. The health care providers petitioned this Court for review, arguing that the court of appeals incorrectly held that the Reeses could assert wrongful death and survival actions and that Tara Reese could assert her own individual claim. Donnie Reese did not appeal the adverse judgment against his individual claim.

## II

At common law, the death of a person who was physically injured by a defendant's negligence and died from those injuries had two important consequences with respect to legal recovery. First, the decedent's own tort action was extinguished. Second, third persons who suffered loss by the decedent's death, like children, parents or a spouse, lost their right to recover. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 127 at 945 (5th ed.1984). To ameliorate this harsh result, the Texas Legislature followed the lead of the British Parliament and other states and enacted the wrongful death and survival statutes in 1860 and 1895. *See generally* Wex S. Malone, *The Genesis of Wrongful Death*, 17 Stan. L.Rev. 1043 (1965) (detailing the passage of Lord Campbell's Act in England in 1840 and the creation of wrongful death causes of action by American courts and legislatures after 1838). Our wrongful death statute provides: "A person is liable for damages arising from an injury that causes an individual's death if the injury was caused by the person's or his agent's or servant's wrongful act, neglect, carelessness, unskillfullness, or default." Tex. Civ. Prac. & Rem.Code § 71.002(b). Our survival statute provides: "A cause of action for personal injury to the health, reputation, or person of an injured person does not abate because of the death of the injured person or because of the death of a person liable for the injury." *Id.* § 71.021(a).

In 1987, this Court held that these laws did not modify the common law rule against recovery with respect to a stillborn fetus. *Witty v. Am. Gen. Capital Distrib., Inc.*, 727 S.W.2d 503, 506 (Tex.1987). We reasoned in *Witty* that the Legislature did not intend the words "individual" or "person" to include an unborn fetus. *Id.* at 504. Because of the common-law rule that legal rights were contingent upon live birth, we opined that the Legislature would have expressly created a wrongful death or survival cause of action for an unborn fetus if it intended to do so. *Id.* at 505. In so holding, we expressed no opinion about whether a fetus is a person in either the philosophical or scientific sense. *Id.* at 506.

Since 1987, this Court has repeatedly affirmed its decision in *Witty*. *See Brown v. Shwarts*, 968 S.W.2d 331, 335 (Tex.1998); *Krishnan v. Sepulveda*, 916 S.W.2d 478, 479–80 (Tex.1995); *Pietila v. Crites*, 851 S.W.2d 185, 187 (Tex.1993) (per curiam); *Blackman v. Langford*, 795 S.W.2d 742, 743 (Tex.1990) (per curiam); *Tarrant County Hosp. Dist. v. Lobdell*, 726 S.W.2d 23 (Tex.1987) (per curiam). In *Brown*, we held that a fetus, later born alive, was a "patient" within the meaning of TEX. REV. CIV. STAT. art. 4590i, § 1.03(a)(4), and that the statute of limitations for its

wrongful death action began to run from the date of its prenatal injuries. The dissent argues that because this recognized "legal injury" to a fetus, it implicitly disaffirmed *Witty*. But the Court in *Brown* explained that its holding was indeed consistent with *Witty*. *Brown* held that a fetus achieves the status of a patient whose injuries are entitled to legal recognition only upon live birth, at which time that status then relates back to the date of injury for limitations purposes. *Brown*, 968 S.W.2d at 335. In *Krishnan*, we emphasized that the Legislature still had not amended the wrongful death and survival statutes to change our holding in *Witty* and create a wrongful death or survival cause of action for loss of a fetus. *Krishnan*, 916 S.W.2d at 481. Relying on the presumption that legislative inaction is legislative acquiescence, we again declined to recognize a statutory cause of action when the Legislature had not altered the statute. *Id.* at 481. We also declined to recognize a common law right to recover for the loss of companionship stemming from the death of a fetus. *Id.* at 482. None of these cases raised the question whether the law violated the Equal Protection Clause.

In 2003, the Legislature did grant the parents of a stillborn child a cause of action under the Wrongful Death Act. *See* Tex. Civ. Prac. & Rem.Code § 71.001(4) (defining "individual" under the wrongful death act to include "an unborn child at every stage of gestation from fertilization until birth"). However, the statute expressly does not apply to claims "for the death of an individual who is an unborn child that is brought against ... a physician or other health care provider licensed in this state, if the death directly or indirectly is caused by, associated with, arises out of, or relates to a lawful medical or health care practice or procedure of the physician or health care provider." *See* Tex. Civ. Prac. & Rem.Code § 71.003(c)(4). Additionally, the Legislature expressly stated that the statute operates prospectively only. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 822, § 1.04, 2003 Tex. Gen. Laws 2607, 2608. The parties do not contend that this case involved anything other than a lawful medical procedure, so this case would not be covered even if the new statute were applicable.

The Reeses first urge that we recognize the repeated error of our jurisprudence in this area and overrule *Witty*. Because the Legislature has left the holding of *Witty* in place for all suits against health care providers arising after September 1, 2003, we decline to overrule *Witty* for those cases remaining in the court system that arose before that date.

Next, the Reeses correctly point out that none of our previous decisions on this issue address the equal protection arguments that were the basis for the court of appeals' decision. They urge us, as a matter of first impression, to hold that the wrongful death and survival statutes are unconstitutional on equal protection grounds.[1]

The United States Constitution prohibits the government from denying persons equal protection of the laws. The Fourteenth Amendment provides that "No State shall ... deny to any person ... the

---

1. In *Parvin v. Dean,* a case not appealed to this Court, the court of appeals held that the law violated both the United States and Texas Constitutions. 7 S.W.3d 264, 274 (Tex.App.— Fort Worth 1999, no pet.). The *Parvin* court wrote: "We perceive no rational or compelling state interest that justifies the wrongful death and survival statutes' unequal application to born babies while at the same time excluding viable but unborn babies and the unequal application to their parents." *Id.* at 274. For reasons we explain below, we reject the *Parvin* court's equal protection analysis.

equal protection of the laws." U.S. CONST. amend XIV, § 1. The Texas Constitution contains a similar provision: "All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services." TEX. CONST. art. 1, § 3. The parties do not argue any distinction between these two clauses, and we have said that both guarantees "require a similar multi-tiered analysis." *Ford Motor Co. v. Sheldon,* 22 S.W.3d 444, 451 (Tex.2000); *see also Rose v. Doctors Hosp.,* 801 S.W.2d 841, 846 (Tex.1990) ("Texas cases echo federal standards when determining whether a statute violates equal protection."). Two classifications are at issue here. The first is the distinction in the wrongful death statute between parents of a stillborn fetus and parents of a child born alive. The second is the distinction under the survival statute between a fetus that dies in utero and a fetus that is born but dies subsequent to birth. The United States Supreme Court has held that the unborn are not included within the protection of the Fourteenth Amendment, which contains the Equal Protection Clause. That Court held in *Roe v. Wade,* 410 U.S. 113, 158, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), "that the word 'person,' as used in the Fourteenth Amendment, does not include the unborn." While the Supreme Court has acknowledged the state's interest in the life of a fetus before birth, *Planned Parenthood v. Casey,* 505 U.S. 833, 846, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), it has never repudiated its holding in *Roe* that the Equal Protection Clause does not apply to a fetus. The Legislature may therefore ex-

tend wrongful death and survival causes of action only to persons that are born live without violating the federal Equal Protection clause. The Reeses do not argue that our state constitution's guarantee of equal protection is broader than or different from the federal constitution in this regard. *See Tex. Dep't of Transp. v. Barber,* 111 S.W.3d 86, 106 (Tex.2003). In the absence of this showing, we decline on this record to hold that our state constitution provides additional protection to fetuses or requires that we abandon the common-law rule.

■ A parent's claim for loss of consortium and mental anguish damages for the death of a child is entirely derivative of the child's cause of action against a tortfeasor. *See generally Diaz v. Westphal,* 941 S.W.2d 96, 99 (Tex.1997). If the child has no cause of action, neither do the parents. It is not a violation of the Equal Protection Clause to fail to provide parents with a claim for the wrongful death of a fetus in utero when the Equal Protection Clause does not prohibit a legislative body from withholding a wrongful death cause of action from the fetus. There is a distinction between the harm that a mother suffers from injury to part of her body and the loss of a fetus. *Edinburg Hosp. Auth. v. Trevino,* 941 S.W.2d 76, 79 (Tex.1997); *Krishnan,* 916 S.W.2d at 481–82. The former is a direct cause of action that the mother has in her own right, while the latter is a derivative claim.

■ We therefore hold that the wrongful death and survival statutes do not violate the Equal Protection Clause by prohibiting parents of a stillborn fetus from bringing claims under them.[2]

---

**2.** In so holding, we join a number of other jurisdictions around the country that have reached the same conclusion. *See Marie v. McGreevey,* 314 F.3d 136, 141–42 (3d Cir.

2002); *Kandel v. White,* 339 Md. 432, 663 A.2d 1264, 1269 (1995); *Hernandez v. Garwood,* 390 So.2d 357, 359 (Fla.1980); *Jus-*

## III

Next, we address the court of appeals' holding that the trial court erred in granting summary judgment for the health care providers, thereby prohibiting Tara Reese's separate cause of action for the damages she suffered as a result of her doctors' alleged negligence. 87 S.W.3d at 206.

■ The health care providers moved for summary judgment under both Rule 166a(c) and Rule 166a(i). Tex.R. Civ. P. 166a(c), 166a(i). To succeed in a motion for summary judgment under Rule 166a(c), a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). In deciding whether there is a disputed issue of material fact, every doubt must be resolved in favor of the nonmovant and evidence favorable to the nonmovant must be taken as true. *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Under Rule 166a(i), a movant must establish that "[a]fter adequate time for discovery . . . there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." Tex.R. Civ. P. 166a(i); *see also Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 207 (Tex.2002). To defeat a Rule 166a(i) summary judgment motion, the nonmovant must produce summary judgment evidence raising a genuine issue of material fact. Tex.R. Civ. P. 166a(i); *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (2004). A genuine issue of material fact exists if the nonmovant produces more than a scintilla of evidence establishing the existence of the challenged element. *Ford Motor Co.,* 135 S.W.3d at 600; *Morgan v. Anthony,* 27 S.W.3d 928, 929 (Tex.2000).

■ The health care providers argued in their summary judgment motions that as a matter of law a bystander cannot recover mental anguish damages in a medical malpractice case. Additionally, the health care providers claimed that Tara Reese failed to present any evidence that she sustained legally recoverable damages resulting from the health care providers' alleged negligence. The trial court granted both motions. The court of appeals reversed the trial court, holding that Reese presented more than a scintilla of evidence to support her claims against the health care providers arising from their negligent care and treatment. We agree.

Reese produced an affidavit from another obstetrician stating that her health care providers failed to monitor her blood pressure or evaluate her tachycardia, and that such failure fell below the legal standard of care. The obstetrician's affidavit is some evidence that Reese's doctors breached their legal duty to provide competent medical care to her. *See Krishnan v. Sepulveda,* 916 S.W.2d 478, 480 (Tex.1995).

In *Krishnan,* this Court held that mental anguish damages are recoverable when a doctor's medical negligence causes injury, which includes the loss of a fetus. 916 S.W.2d at 480–82. Although the hospital argues that there is no evidence of any physical injury to Tara Reese "that would not have otherwise occurred," we recognized in *Krishnan* that recovery may be had in this situation "even absent proof of physical injury" other than the loss of the unborn child. *Id.* at 482. The elements of a mother's claim include: (1) a breach of the "legal duty to provide competent medical care to [the mother,]" (2) that "proximately caus[es] . . . the loss of her fetus[,]" (3) "coupled with the mental anguish re-

*tus v. Atchison,* 19 Cal.3d 564, 139 Cal.Rptr. 97, 565 P.2d 122, 132 (1977).

sulting from the loss of an unborn child." *Id.* We stated in *Krishnan,* however, that not all mental anguish resulting from the loss of an unborn child is recoverable. *Id.* Specifically, we held that parents may not recover "damages for loss of society, companionship, and affection[.]" *Id.*

In *Edinburg Hospital Authority v. Trevino,* 941 S.W.2d 76, 79 (Tex.1997), we expanded our holding in *Krishnan.* As in this case, the mother in *Edinburg Hospital Authority* brought a claim against her doctor for mental anguish resulting from negligent treatment that allegedly caused her child to be stillborn. *Id.* at 78. To prove her mental anguish damages, she presented

> evidence that she had made preparations in expectation of the arrival of her baby: she had set aside a room in her home for the baby and purchased furniture for the room. She also testified that the loss of the fetus "still hurts [her] like it was yesterday," that she carries a clipping of the funeral service with her, and that her marriage deteriorated after the loss of the fetus.

*Id.* at 79. We held that the mother's evidence related to her grief over the loss of the fetus as a separate individual, but did not relate to damages suffered as a result of the mother's own injury. *Id.* Because *Krishnan* was decided after the trial in *Edinburg Hospital Authority,* we remanded the case to the trial court in the interest of justice to allow the mother to present evidence of "mental anguish damages suffered because of loss of the fetus resulting from an injury to the mother." *Id.*

The hospital suggests that Tara Reese only provided evidence of her grief from the loss of her unborn child. We disagree. Certainly, there is evidence in the record that Tara Reese grieved over this loss. While such grief may be non-compensable

under our law, it is nonetheless an expected, natural consequence of the loss of an unborn child, and it is not surprising that Tara Reese's affidavit would reflect such grief. We believe, however, that the affidavit also raises a fact question as to mental anguish damages separate and apart from the "loss of society, companionship, and affection." Reese described a "long and painful delivery" that was made even more psychologically traumatic because she had to experience the delivery "knowing [her] baby was dead."

We conclude that this evidence of mental anguish suffered during the course of Reese's medical treatment is sufficient to raise a fact question regarding compensable mental anguish damages from her own injury. *See Krishnan,* 916 S.W.2d at 482. Consequently, we affirm the court of appeals' holding that Reese produced sufficient evidence raising material fact issues as to whether Tara Reese suffered mental anguish damages for her own injury sufficient to defeat the summary judgment motion.

\* \* \*

For these reasons, we reverse the court of appeals' judgment in part and affirm in part. We render judgment that the Reeses take nothing on their wrongful death and survival claims, and we remand Tara Reese's individual medical negligence claim to the trial court for further proceedings in accordance with this opinion.

Justice O'NEILL filed a concurring opinion.

Justice SMITH filed a dissenting opinion.

Justice SCHNEIDER did not participate in the decision.

Justice O'NEILL, concurring.

I agree with the dissent that neither the 8th nor the 24th Legislature intended to exclude from the wrongful death and survival acts a viable human fetus who dies before birth, and for reasons that Justices Kilgarlin and Gonzalez, and now Justice Smith, have expressed, *Witty v. American General Capital Distributors, Inc.*, 727 S.W.2d 503 (Tex.1987), was wrongly decided. *See Krishnan v. Sepulveda,* 916 S.W.2d 478, 483–90 (Tex.1995); *Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 85–92 (Tex.1997). I am also sympathetic to the dissent's general frustration with the doctrine of legislative acceptance in certain circumstances. But in this area, the Legislature has failed to act for well over a decade and a half even though the Court has continued to follow *Witty* and repeatedly invited the Legislature to clarify the statutory meaning if it thought the *Witty* court did not interpret the wrongful-death and survival acts correctly. *See Krishnan, 916 S.W.2d at 479–80; Pietila v. Crites, 851 S.W.2d 185, 187 (Tex.1993) (per curiam); Blackman v. Langford, 795 S.W.2d 742, 743 (Tex.1990) (per curiam); Tarrant County Hosp. Dist. v. Lobdell, 726 S.W.2d 23 (Tex.1987).* The Legislature has now acted and, without wholly disavowing *Witty,* amended the statutory definition of "individual" to include "an unborn child at every stage of gestation from fertilization until birth." Tex. Civ. Prac. & Rem.Code § 71.001(4). Under these circumstances, I agree with the Court that we are bound by *Witty* and therefore join the Court's opinion.

Justice SMITH, dissenting.

This medical malpractice case arises from treatment provided to Tara Reese and her unborn child, named Clarence Reese by the parent-plaintiffs, who died in utero on May 12, 1998. Citing *Witty v. American General Capital Distributors, Inc.,* 727 S.W.2d 503 (Tex.1987), the defendants assert that health care providers owe no legal duty of reasonable care to a human fetus who dies before birth. In response, the plaintiffs request that we overrule *Witty* and recognize a cause of action under both the wrongful death statute and the survival statute for negligence that causes the prenatal death of a viable fetus.

The wrongful death statute provides: "An action for actual damages arising from an injury that causes an *individual's* death may be brought if liability exists under this section." Tex. Civ. Prac. & Rem.Code § 71.002(a) (emphasis added). The survival statute provides: "A cause of action for personal injury to the health, reputation, or person of an injured *person* does not abate because of the death of the injured person...." *Id.* § 71.021(a) (emphasis added).

The initial question presented in this case is whether the words "individual" and "person" include a viable fetus who dies before birth. Relying on "legislative acquiescence" and stare decisis, the Court concludes that they do not. I disagree.

**I**

The Texas Wrongful Death Act was enacted by the 8th Legislature[1] and the Texas Survival Act was enacted by the 24th Legislature.[2] Before the plaintiffs' causes of action accrued, no relevant parts of those enactments had been substantive-

---

1. *See* Act approved Feb. 2, 1860, 8th Leg., R.S., ch. 35, 1860 Tex. Gen. Laws 32 (current version at Tex. Civ. Prac. & Rem.Code §§ 71.001–71.020).

2. *See* Act approved May 4, 1895, 24th Leg., R.S., ch. 89, 1895 Tex. Gen. Laws 143 (current version at Tex. Civ. Prac. & Rem.Code §§ 71.021–71.030).

ly amended.[3] Therefore, in resolving this case, the Court must ascertain and effectuate the intent of the enacting Legislatures. *See Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 383 (Tex.2000) ("The primary rule in statutory interpretation is that a court must give effect to legislative intent."); *Manry v. Robison,* 122 Tex. 213, 56 S.W.2d 438, 447 (1932) ("[I]n the absence of some specific amendment we should give [a statute] the meaning which it had at the time of its enactment.").

In my view, when adopting the wrongful death act and the survival act, neither the 8th Legislature nor the 24th Legislature intended to exclude a viable human fetus who dies before birth. In addition, when construing a statute, a court should not draw any inference regarding the intent of the enacting legislature from the inaction of subsequent legislatures. My position regarding what is commonly referred to as "legislative acquiescence" is consistent with the majority of jurisdictions. *See, e.g., Helvering v. Hallock,* 309 U.S. 106, 119–20, 60 S.Ct. 444, 84 L.Ed. 604 (1940) ("To explain the cause of non-action by

Congress when Congress itself sheds no light is to venture into speculative unrealities."). Finally, I believe that the Court is not constrained in this case by its prior decisions. An analysis of the factors traditionally considered by courts establishes that *Witty* and its progeny are weak precedent. Moreover, the initial question presented in this case is too important to be resolved solely on the basis of stare decisis.

The Court should abandon the interpretation of sections 71.002 and 71.021 of the Civil Practice and Remedies Code first announced in *Witty.*[4] Instead, we should construe "individual" and "person" to include a fetus, as urged by Justice Kilgarlin in his *Witty* dissent, which was joined by Chief Justice Hill and Justice Ray. *Witty,* 727 S.W.2d at 506–12. Similarly, we should adopt the reasoning of Justice Gonzalez's dissents in *Krishnan v. Sepulveda,* 916 S.W.2d 478, 483–89 (Tex.1995) and *Edinburg Hospital Authority v. Trevino,* 941 S.W.2d 76, 85–92 (Tex.1997), which assert that a fetus falls within the definitions of "individual" and "person."[5]

---

**3.** In 2003, after the plaintiffs' causes of action accrued, the wrongful death statute was amended. *See* Act approved June 20, 2003, 78th Leg., R.S., ch. 822, 2003 Tex. Gen. Laws 2607. The Act became effective on September 1, 2003. Among other changes, the Legislature provided, for the first time, a definition of "individual" in the statute. " 'Individual' includes an unborn child at every stage of gestation from fertilization until birth." *Id.* § 1.01, sec. 71.001, 2003 Tex. Gen. Laws 2608. The new statutory definition and the other amendments to the wrongful death statute "apply only to a cause of action that accrues on or after the effective date of [the] Act." *Id.* § 1.04, 2003 Tex. Gen. Laws 2608. Therefore, this case "is governed by the law as it existed immediately before the effective date of [the] Act." *Id.*

**4.** In *Witty,* the Court noted: "The recent codification of the Wrongful Death Act provides recovery for 'damages arising from an injury

that causes an *individual's* death.' Tex. Civ. Prac. & Rem.Code Ann. § 71.002(b) (emphasis added). Prior to the codification, the Act provided recovery of 'damages on account of the injuries causing the death of any *person.*' Tex.Rev.Civ. Stat. Ann. art. 4671 (Vernon Supp.1941–1985) (emphasis added). The legislature did not intend any substantive change in the Act by substituting the word 'individual' for the word 'person' in the recodification. Tex. Civ. Prac. & Rem.Code Ann. § 10, 1985 Tex. Sess. Law Serv. 7219 (Vernon)." *Witty,* 727 S.W.2d at 504. The wrongful death statute did not define "individual" until after the Reeses' causes of action accrued. The survival statute uses "person" throughout rather than "individual," and has never defined "person."

**5.** In his *Trevino* concurrence, Justice Abbott stated: "I would be inclined to overrule *Witty* and allow recovery for the wrongful death of a fetus. However, the Treviños have not

Given my view of the proper interpretation of "individual" and "person" in the wrongful death and survival statutes, I do not reach the substantial constitutional issues raised in this case because the plaintiffs' causes of action would be statutorily recognized.[6] I also do not reach the issue regarding whether Tara Reese, the mother, raised a fact issue on her own claim for medical malpractice. Finally, because of my concern about the Court's analysis regarding whether a viable human fetus is a "person" under the equal protection provisions of the United States Constitution and the Texas Constitution, I do not join any part of the Court's opinion.

## II

I recognize the importance of stare decisis and acknowledge that precedent must not be lightly discarded. However, "[s]tare decisis is not an inexorable command; rather, 'it is a principle of policy and not a mechanical formula of adherence to the latest decision.'" *Payne v. Tennessee*, 501 U.S. 808, 828, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (quoting *Helvering v. Hallock*, 309 U.S. 106, 119, 60 S.Ct. 444, 84 L.Ed. 604 (1940)).

Recognizing that the doctrine of stare decisis is not absolute, this Court has previously overruled itself in this specific area

of the law. In *Trevino*, Justice Gonzalez noted:

> In *Leal v. C.C. Pitts Sand & Gravel, Inc.*, 419 S.W.2d 820, 821 (Tex.1967), this Court held that parents of a viable infant born alive have a cause of action under the Wrongful Death Statute if the baby later dies from injuries inflicted while in utero. In the process, we overruled *Magnolia Coca Cola Bottling Co. v. Jordan*, 124 Tex. 347, 78 S.W.2d 944 (1935), citing one legal writer who remarked that "[s]eldom in the law has there been such an overwhelming trend in such a relatively short period of time as there has been in the trend towards allowing recovery for prenatal injuries to a viable infant." *Leal*, 419 S.W.2d at 822.

*Trevino*, 941 S.W.2d at 88 (Gonzalez, J., dissenting). Like *Magnolia Coca Cola Bottling Co. v. Jordan*, *Witty* was wrongly decided and should be overruled. *Cf. Sanchez v. Schindler*, 651 S.W.2d 249, 251 (Tex.1983) (overruling *March v. Walker*, 48 Tex. 372, 375 (1877)—"It is time for this court to revise its interpretation of the Texas Wrongful Death statutes . . . .").

Texas courts have recognized several factors that weaken the precedential value of an opinion. For example, the Court of

---

made any argument to this Court that *Witty* should be overruled." *Trevino*, 941 S.W.2d at 85 (Abbott, J., concurring).

**6.** Under the federal supremacy clause, we are bound by *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and its progeny. However, the resolution of this case is not controlled by that line of cases. *Roe v. Wade* does not foreclose state law remedies for negligent medical treatment that, without the consent of the mother, causes the death of a human fetus. *See, e.g., Summerfield v. Superior Court*, 144 Ariz. 467, 698 P.2d 712, 723 (1985) ("*Roe v. Wade* balances the rights of the fetus against the rights of its mother and concludes that the latter's right to privacy

outweighs the former's right to life in the first trimester of pregnancy; it 'neither prohibits nor compels' the inclusion of a fetus as a person for the purposes of other enactments.") (citation omitted); *O'Grady v. Brown*, 654 S.W.2d 904, 910 (Mo.1983) ("*Roe v. Wade*, while holding that the fetus is not a 'person' for purposes of the 14th amendment, does not mandate the conclusion that the fetus is a legal nonentity. The abortion issue involves the resolution of the mother's rights as against the child when the two are in conflict. Whatever may be the determination of the rights in that context, this special relation gives a third-party tortfeasor no comparable rights.'") (citation omitted).

Criminal Appeals utilizes the following factors when determining whether to overrule precedent: 1) the original decision was flawed from the outset, due to flawed reasoning, lack of authority, or misplaced reliance upon cited authorities; 2) the decision conflicts with other precedent; 3) the decision has been undercut by the passage of time; 4) the decision produces inconsistency and confusion in the law; and 5) the decision consistently creates unjust results. *Hammock v. State*, 46 S.W.3d 889, 892–93 (Tex.Crim.App.2001). The foregoing factors are present in this case, as are additional considerations that undermine the precedential value of *Witty* and its progeny.

## A

*Witty* was wrongly decided—its reasoning was flawed and it lacked authority. Rather than replicate verbatim the lengthy and eloquent dissents authored by Justices Kilgarlin and Gonzalez, I adopt by reference their reasoning concerning the proper interpretation of "individual" and "person" in the wrongful death and survival statutes. The dissents in *Witty, Krishnan,* and *Trevino* demonstrate that the common law definition of "person" during the period when the wrongful death act and the survival act were enacted treated a human fetus as a legal person and that other historical evidence indicates the enacting Legislatures intended to include a fetus within the meaning of "person" for purposes of those acts.

Justices Kilgarlin and Gonzalez conducted an extensive examination of the common law concerning legal personhood, dating to its eighteenth century English origins, and produced persuasive evidence that a fetus was regarded as a legal person under the common law during the last half of the nineteenth century.[7] The majority in *Witty* did not dispute or otherwise directly address the dissent's historical evidence regarding the common law definition of "person" and failed to consider how the common law informed the understanding and intent of the enacting Legislatures.

In his dissent in *Witty*, Justice Kilgarlin also stated:

In Chapter IX of that Code, entitled "Of Homicide," the legislature provided "[t]he person upon whom the homicide is alleged to have been committed, must be in existence by actual birth." Tex. Pen. Code art. 545 (1856); Oldham & White, *Digest, Laws of Texas* 425 (1859); Paschal, *Digest of the Laws of Texas,* Vol. I, article 2206. If the legislature found it necessary to limit persons upon whom a homicide could be committed to those born alive, can we not infer two things? One, is there not another category of "persons" than those in existence by actual birth? If so, that is a concession that a fetus was a person, but that the legislature did not intend to follow "the ancient law," and make it the subject of a homicide. Two, if the legislature found it necessary in the 1856 Penal Code to qualify "person" to one born alive, why did not the Wrongful Death Act contain the same qualification? Law of February 2, 1860 ch. 35, 1860 Tex. Gen. Laws 32, 4 H. Gammel, *Laws of Texas* 1394 (1898). Can it not be argued that had the legislature intended a similar limitation on "person," it would have said so, contrary to the assertion by the court "that the legislature did not intend the words 'individual' or 'person'

7. In concluding that Arizona's wrongful death statute provided a cause of action for a viable fetus who dies before birth, the Arizona Supreme Court provided a scholarly analysis of the relevant common law. *See Summerfield,* 698 P.2d at 715–21.

to be construed to include an unborn fetus." 727 S.W.2d at 504.

*Witty,* 727 S.W.2d at 510.

It is also significant that the Legislature criminalized abortion in 1854.[8] The Texas law outlawing abortion was part of a national movement that began in the mid-nineteenth century. By 1860, twenty of the thirty-three states had outlawed abortion by statute. By 1880, abortion was illegal in every state. *See* Eva R. Rubin, Abortion, Politics, and the Courts: Roe v. Wade and Its Aftermath 13–15 (1987). The relevance of the 1854 enactment outlawing abortion to the understanding and intent of the Legislature that adopted the wrongful death act in 1860 is clear: it is unlikely that only three regular sessions later, the Legislature had fundamentally altered its view regarding whether a fetus should be recognized as a legal person. In addition, when the survival act was adopted in 1895, the 1854 abortion enactment remained in effect.

## B

Another factor undermining *Witty* is that it conflicts with other, more recent precedent. In *Brown v. Shwarts,* 968 S.W.2d 331 (Tex.1998), the Court concluded that, in a wrongful death suit involving a child who died the day after birth, limitations began to run from the time the prenatal injury occurred.[9] The test to determine when the statute of limitations begins to run on a tort action is whether the act causing the damage constitutes a legal injury. *See, e.g., Atkins v. Crosland,* 417

S.W.2d 150, 153 (Tex.1967). *Shwarts* conflicts with *Witty* because, under *Witty,* there is no legal injury giving rise to a wrongful death or survival cause of action until the child is born alive. Based on *Witty,* any legally recognized injury is merely hypothetical until birth occurs—potentially many months after limitations begin to run under *Shwarts. Witty* cannot be reconciled with *Shwarts* in light of well-established limitations principles.

*Witty* is also in tension with some of this Court's earlier jurisprudence that remains good law. In *Nelson v. Galveston, Harrisburg & San Antonio Railway Co.,* 78 Tex. 621, 14 S.W. 1021 (1890), the Court concluded that a pregnant mother could bring wrongful death and survival actions against her deceased husband's employer on behalf of their unborn child, relying in part on the common law:

> Perhaps no case, when it was decided in 1798, involved more important rights than that of *Thellusson v. Woodford,* 4 Ves. 319. Counsel and judges of high authority engaged in its discussion and decision. Replying to the contention that an unborn child was a nonentity, and, in that case, the limitation was therefore void, Mr. Justice Buller said: "Let us see what the nonentity can do. He may be vouched in a recovery, though it is for the purpose of making him answer over in value. He may be an executor. He may take under the statute of distributions. He may have an injunction, a guardian."

---

8. *See* Act approved Feb. 9, 1854, 5th Leg., ch. 49, § 1, 1854 Tex. Gen. Laws 58. The sentence for aborting a fetus was "confinement to hard labor in the Penitentiary not exceeding ten years." *Id.*

9. In resolving *Shwarts,* the Court concluded that a fetus was a "patient" with a "doctor-patient" relationship. *Shwarts,* 968 S.W.2d at 334. In a concurrence, Justice Gonzalez

noted that every definition of "patient" contained in a Texas statute referred to a "person" or "individual." *Id.* at 336–37 (Gonzalez, J., concurring). The conclusion in *Witty* that a fetus is neither an "individual" nor a "person" is therefore inconsistent with the conclusion in *Shwarts* that a fetus is a "patient."

*Id.* at 1022. The *Nelson* Court further noted: "We think, also, that the plaintiff in this case, although unborn at the time of his father's death, was in being, and one of his surviving children." *Id.* at 1023. The majority in *Witty* acknowledged that *Nelson* remained good law. *See Witty,* 727 S.W.2d at 505.

## C

*Witty* has been undercut by the passage of time. The majority in *Witty* stated that "by a ratio of better than two to one, the majority of states have ruled in favor of permitting a wrongful death action on behalf of an unborn fetus. . . ." *Id.* The dissent clarified that thirty-five states and the District of Columbia had ruled in favor of permitting those actions and only eight states had ruled against. *Id.* at 512.

At the time *Witty* was decided, Montana and North Carolina were included among the eight states that did not "allow this type of recovery." *Id.* at 512 n. 3. Both states have since recognized a wrongful death action for a viable fetus who dies before birth. *See Strzelczyk v. Jett,* 264 Mont. 153, 870 P.2d 730, 733 (1994) (holding that a "full-term fetus should be considered a 'person' "); *DiDonato v. Wortman,* 320 N.C. 423, 358 S.E.2d 489, 491 (1987) (holding that "the word 'person' in the Wrongful Death Act includes a viable fetus"). Arkansas has also since recognized an action for a viable fetus who dies before birth. *See Aka v. Jefferson Hosp. Ass'n, Inc.,* 344 Ark. 627, 42 S.W.3d 508, 512 (2001) (overruling Arkansas Supreme Court precedent that a "viable fetus is not a 'person' within the meaning of Arkansas's wrongful-death statute").

Although not unanimous, an overwhelming majority of jurisdictions continues to recognize a wrongful death action for negligent conduct that causes the prenatal death of a viable fetus.

## D

*Witty* and its progeny have produced inconsistency and confusion in the law. One example is the different resolution of the mental anguish claims in *Trevino* and in this case. Relying on *Witty,* the Court in *Trevino* stated:

> Mora sought to prove mental anguish damages in part by presenting evidence that she had made preparations in expectation of the arrival of her baby: she had set aside a room in her home for the baby and purchased furniture for the room. She also testified that the loss of the fetus "still hurts [her] like it was yesterday," that she carries a clipping of the funeral service with her, and that her marriage deteriorated after the loss of the fetus. This evidence relates to the grief that Mora felt over the loss of the fetus as a separate individual and not as part of her own body. *Krishnan* and our decision today clarify that a woman can recover mental anguish damages resulting from negligent treatment that causes the loss of a fetus *as part of the woman's body.*

*Edinburg Hosp. Auth. v. Trevino,* 941 S.W.2d 76, 79 (Tex.1997).

In this case, the Court attempts to distinguish Tara Reese's testimony from Shirley Mora's testimony. However, the testimony of the two women is in fact very similar. Reese's affidavit stated:

> On the morning of May 12, 1998, I was told that our baby had died. I was devastated. I had carried this baby for almost eight months and then that part of me was suddenly gone. When the baby died, a part of me died too.

> The feeling of carrying a part of me that was no longer living is difficult to describe. To make it worse, I had to go through a long and painful delivery,

knowing our baby was dead. I will never forget that feeling as long as I live.

Afterwards, I cried uncontrollably because of what happened to us. There were many nights when I could not sleep and had nightmares about our loss. My heart was broken.

My husband and I received some counseling from our pastor, but I do not know if I will ever fully recover from what happened.

Reese's testimony is only semantically, not substantively, different from that given by Mora. Reese's statements express mental anguish above and beyond that resulting from the loss of a part of her body, such as a finger.

The Court's half-hearted and ultimately unconvincing attempt to distinguish Reese's testimony from Mora's testimony illustrates that the legal artifice constructed by *Witty*, which equates a viable human fetus with a finger or other part of a woman's body, is untenable. Indeed, this legal fiction is belied by the dichotomous biological reality wherein the fetus receives blood and nourishment from the mother through the umbilical cord and placenta, but possesses its own unique genetic makeup and organs. While a fetus is profoundly interconnected with the mother, it is at the same time growing and developing into a separate human being. A mother cannot reasonably parse the mental pain and anguish she feels, distinguishing between the effect of a miscarriage on her own body and the concomitant death of the fetus. As a result, the standard established by *Trevino* and applied by the majority in this case is simply a "magic words" test under which the mother must describe her mental anguish without making too numerous or too explicit references to the deceased fetus.

**E**

The rule announced in *Witty* continues to create unjust results. It produces the counterintuitive consequence, which was likely not intended by the enacting Legislatures, that "it is more profitable for the defendant to kill than to injure." *Witty*, 727 S.W.2d at 506–07 (Kilgarlin, J., dissenting).

Before *Witty*, the Alabama Supreme Court recognized this injustice:

> To deny recovery where the injury is so severe as to cause the death of a fetus subsequently stillborn, and to allow recovery where injury occurs during pregnancy and death results therefrom after a live birth, would only serve the tortfeasor by rewarding him for his severity in inflicting the injury. It would be bizarre, indeed, to hold that the greater the harm inflicted the better the opportunity for exoneration of the defendant. Logic, fairness and justice compel our recognition of an action, as here, for prenatal injuries causing death before a live birth.

*Eich v. Town of Gulf Shores*, 293 Ala. 95, 300 So.2d 354, 355 (1974) (footnote omitted).

This year, New York's highest state court premised a decision on the same rationale. *See Broadnax v. Gonzalez*, 2 N.Y.3d 148, 777 N.Y.S.2d 416, 809 N.E.2d 645 (N.Y.2004). In overturning its prior decision in *Tebbutt v. Virostek*, 65 N.Y.2d 931, 493 N.Y.S.2d 1010, 483 N.E.2d 1142 (1985), which was similar to the Texas decision in *Krishnan*, the New York court stated:

> [W]e are no longer able to defend *Tebbutt's* logic or reasoning.

> As its dissenters recognized, the rule articulated in *Tebbutt* fits uncomfortably into our tort jurisprudence. Infants who are injured in the womb and survive the pregnancy may maintain causes of

action against tortfeasors responsible for their injuries. Further, a pregnant mother may sue for any injury she suffers independently. A parent, however, cannot bring a cause of action for wrongful death when a pregnancy terminates in miscarriage or stillbirth.

Injected into this common law framework, *Tebbutt* engendered a peculiar result: it exposed medical caregivers to malpractice liability for in utero injuries when the fetus survived, but immunized them against any liability when their malpractice caused a miscarriage or stillbirth. In categorically denying recovery to a narrow, but indisputably aggrieved, class of plaintiffs, *Tebbutt* is at odds with the spirit and direction of our decisional law in this area.

*Broadnax,* 777 N.Y.S.2d 416, 809 N.E.2d at 648 (citations omitted).

## F

In addition to the factors discussed above, the Court has recognized that, when determining whether to overrule precedent, we should "pause and consider how far the reversal would affect contracts and transactions entered into and acted upon under the law of the Court." *Thompson v. Kay,* 124 Tex. 252, 77 S.W.2d 201, 207 (1934) (quoting *Sydnor v. Gascoigne,* 11 Tex. 449, 455 (1854)). The doctrine of stare decisis has been strictly followed by this Court in cases involving established rules of property rights. *Southland Royalty Co. v. Humble Oil & Ref. Co.,* 151 Tex. 324, 249 S.W.2d 914, 916 (1952). Stare decisis "is never stronger than in protecting land titles, as to which there is great virtue in certainty." *John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst,* 90 S.W.3d 268, 281 (Tex. 2002). In that area and others involving vested property or contract rights, revers-

ing precedent may have the undesirable effect of "upsetting long-settled expectations." *See id.*

Overruling *Witty* will not upset existing economic arrangements based on long-settled expectations. Tortfeasors have no long-settled expectation of immunity from causes of action arising out of negligent conduct that results in the prenatal death of a viable fetus. *Cf. Moragne v. States Marine Lines,* 398 U.S. 375, 403–04, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) (overruling longstanding United States Supreme Court precedent and recognizing wrongful death action under general maritime law—"It can hardly be said that shipowners have molded their conduct around the possibility that in a few special circumstances they may escape liability for such a breach.").

## III

The initial question presented in this case—whether the words "individual" in the wrongful death statute and "person" in the survival statute include a viable human fetus who dies before birth—is sharply contested. The defendants argue: "The Reese fetus was not born alive. Therefore, Texas law prohibits any recovery under the wrongful death and survival statutes based on the 'death' of the Reese fetus." In response, the plaintiffs argue: "The time has come for this Court to reexamine and narrowly overrule *Witty* as it applies to viable unborn children, restore sanity to an area of jurisprudence that is morally and legally repugnant, and bring Texas into step with those states that recognize these claims."

In resolving this case, the Court does not assert that *Witty* was correctly decided in 1987. Rather, the Court concludes in summary fashion that the original 6–3 de-

cision should not be overruled.[10] However, whether the words "individual" and "person" include a fetus who dies before birth is too important a question to be resolved in that manner.

Based on the analysis set forth in parts I and II above, *Witty* should be overruled. *Cf. Moragne*, 398 U.S. at 405, 90 S.Ct. 1772 ("Finally, a judicious reconsideration of precedent cannot be as threatening to public faith in the judiciary as continued adherence to a rule unjustified in reason, which produces different results for breaches of duty in situations that cannot be differentiated in policy. Respect for the process of adjudication should be enhanced, not diminished, by our ruling today.").

I would affirm the court of appeals' judgment. The Court reverses in part and affirms in part that judgment. Accordingly, I respectfully dissent.

---

10. For example, the Court incorrectly asserts that the Legislature has endorsed "the holding of *Witty*." 148 S.W.3d at 97. In fact, the Legislature rejected this Court's holding in *Witty* in 2003. *Witty* involved a workplace injury that caused the prenatal death of a viable fetus. *See Witty v. Am. Gen. Capital Distrib., Inc.*, 697 S.W.2d 636, 638 (Tex.App.-Houston [1st Dist.] 1985), *rev'd in part*, 727 S.W.2d 503 (Tex.1987) (Kimberly Witty "alleged that while employed by defendant as a receptionist, she tripped over a utility outlet and fell with such force that her unborn baby was fatally injured."). In reversing the court of appeals, this Court specifically held that a fetus was not an "individual." *Witty*, 727 S.W.2d at 504. If the same set of facts occurred today, a similarly situated plaintiff would be entitled to bring a wrongful death action against her employer for the death of her unborn fetus. *See* Tex. Civ. Prac. & Rem. Code §§ 71.001–71.020.