

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-17-00296-CV
_____

**GARRY JACK SULLIVAN, AS INDEPENDENT EXECUTOR OF THE ESTATE OF JUANITA GIBSON, APPELLANT**

**V.**

**SHERRY LAYNE HATCHETT, APPELLEE**

On Appeal from the 287th District Court
Bailey County, Texas
Trial Court No. 9650; Honorable Gordon H. Green, Presiding

February 11, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, Garry Sullivan, Independent Executor for the Estate of Juanita Gibson,[1] appeals from the trial court's final summary judgment rendered in favor of Appellees, Sherry Layne Hatchett, First Baptist Church Lubbock, Christina Michelle Wortham, and

---

[1] Sullivan is Juanita's nephew.

Lisa Marie Scott in a suit concerning construction of the *Last Will and Testament of Charles Henry Gibson*. By two issues, Sullivan contends (1) the trial court erroneously granted summary judgment in which it declared Charles's unambiguous will to have a different meaning than set forth in its four corners and (2) Hatchett's suit was barred by limitations. We reverse and render in part and remand in part.

BACKGROUND

Charles and Juanita Gibson were married in 1943. Charles and Juanita had two children: a daughter, Sherry Layne Hatchett, and a son, Jerry Gibson. Sherry had two daughters, Christina Michelle Wortham and Lisa Marie Scott. Jerry, who predeceased Juanita, also had two children. In 1956, Charles and Juanita purchased eighty acres in Bailey County as community property.

On June 8, 1998, Charles executed his *Last Will and Testament*. He subsequently died on November 14, 2002. In February 2003, his will was admitted to probate as a muniment of title. The trial court signed an *Order Admitting Will to Probate As A Muniment of Title* in which it ordered that "JUANITA VIRGINIA GIBSON is the beneficiary and is entitled to the estate of the Deceased as provided [in his will]." The relevant paragraphs of Charles's will provide as follows:

> SECOND: I give, devise, and bequeath unto my beloved Wife, Juanita Virginia Gibson, all of my interest in and to any of my separate estate and our community estate in the following, only, to-wit: All of my said property, community and separate, which we may own at the time of my death, for so long as she shall live, with power of sale, if necessary, of any of my said estate, hereby intending to give a life estate only to all of my said real and personal property, conferring upon my Wife the right to manage, control, operate and sell, without accounting to the remaindermen hereinafter named, during her lifetime, and to receive all income, rents,

2

revenues and royalties of every kind and description during her lifetime, without accounting, even to the point of completely depleting said life estate.

THIRD: In the event [Juanita] should predecease me, or if we should die in or as a result of the same accident or disaster, or if she should not survive until ninety (90) days after my death . . . I hereby give, devise, grant and bequeath outright and in fee simple, fifty per cent (50%) of my said estate unto my Daughter, SHERRY LAYNE GIBSON HATCHETT . . . ten per cent (10%) of my said estate unto THE FIRST BAPTIST CHURCH, 2201 Broadway, Lubbock, Texas . . . .

FOURTH: All of the rest and residue of my said estate . . . I do hereby give, devise and bequeath in trust, twenty per cent (20%) of said rest and residue unto each of the two named beneficiaries, unto SHERRY LAYNE GIBSON HATCHETT as Trustee, for the use and benefit of two (2) of our three (3) grandchildren if they are still attending a college or university full time . . . such grandchildren being CHRISTINA MICHELLE HATCHETT and LISA MARIE HATCHETT . . . .

Years after Charles's death, on May 21, 2013, Juanita executed her own will. In that will she made specific bequests to her nephew, Sullivan, a niece, and another nephew. She specifically disinherited Sherry, her granddaughters, Christina and Lisa, and the two other grandchildren from her deceased son, Jerry. Juanita died in March 2016, and Sullivan was named Independent Executor of her estate.

In his capacity as Independent Executor of Juanita's estate, Sullivan entered into a Farm and Ranch contract scheduled to close on September 14, 2016. Before closing, Sherry asserted she owned fifty percent of Charles's estate under the third paragraph of his will, thereby creating a cloud on the title to the property. A month later, Sullivan filed a declaratory judgment action to establish the interests of the parties in the Bailey County property and to remove the cloud on the title created by Sherry's claim. Sherry then counter-petitioned for declaratory judgment seeking the same relief.

3

Both parties filed traditional motions for summary judgment. Sullivan's motion was supported by his affidavit, a copy of the deed to the Bailey County property, a copy of Charles's will, and various probate documents. Sullivan averred facts establishing Charles and Juanita's marriage and their subsequent purchase of the Bailey County property. He also averred that Christina and Lisa met the requirements of the trust set up by Charles's will. Sullivan did not plead limitations in any original, amended, or supplemental pleading. He did, however, plead in his motion for summary judgment that Sherry's claim was barred pursuant to section 256.204 of the Texas Estates Code, since Charles's will had been admitted to probate as a muniment of title in 2003.

In support of his motion for summary judgment, Sullivan alleged that Charles's will created a life estate in Juanita pursuant to the second paragraph, a survival clause that could be effectuated by three contingencies pursuant to the third paragraph, and a residual bequest of forty percent of his estate to his granddaughters, Christina and Lisa (twenty percent each) pursuant to the fourth paragraph. He further alleged that because none of the three contingencies in the third paragraph occurred, that paragraph of the will was never triggered, leaving the remainder interest to pass according to the residual bequest found in the fourth paragraph. Because that provision only provided for the disposition of forty percent of Charles's residual estate (the forty percent bequeathed to Christina and Lisa), it left unaccounted for and subject to disposition under the laws of intestate succession the remaining sixty percent. Sullivan finally concluded that under the law of descent and distribution, Charles's residual interest in the Bailey County property passed to the estate of Juanita.

4

Sherry's amended motion for summary judgment was supported by her affidavit and copies of the same documents that were appended to Sullivan's motion. By her affidavit, Sherry, like Sullivan, recited facts establishing Charles and Juanita's marriage and the purchase of the Bailey County property.

Similar to the position being taken by Sullivan, Sherry also alleged that Charles's will created a life estate in Juanita. She disagreed, however, that Charles's will created a partial intestacy, which she asserted was contrary to his intent. Under Sherry's interpretation, Charles disposed of one hundred percent of his estate upon termination of Juanita's life estate by bequeathing fifty percent to her and ten percent to the First Baptist Church, pursuant to the third paragraph, while leaving twenty percent to Christina, and twenty percent to Lisa, pursuant to the fourth paragraph.

Agreeing with Sherry, the trial court granted her amended motion and denied Sullivan's motion. The trial court decreed that Charles's estate be distributed as follows:

(a)   Fifty percent (50%) to SHERRY LAYNE GIBSON HATCHETT;

(b)   Ten percent (10%) to First Baptist Church, Lubbock; and

(c)   Forty percent (40%) in trust for the benefit of Christina Michelle Hatchett and Lisa Marie Hatchett Scott.

The trial court also awarded Sherry $12,500 in attorney's fees. Without a request from either party, the trial court filed *Findings and Conclusions*. Sullivan appealed the trial

court's judgment contending the trial court erroneously granted Sherry's amended motion for summary judgment and also asserting her action was barred by limitations.[2]

SUMMARY JUDGMENT STANDARD OF REVIEW

The standard of review for a traditional summary judgment under Rule 166a(c) of the Texas Rules of Civil Procedure is well established. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex. 1985). Under that standard, we review *de novo* the trial court's ruling on a motion for summary judgment. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The moving party carries the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). Evidence favorable to the nonmovant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). All reasonable inferences, including any doubts, must be resolved in favor of the nonmovant. *Id.*

When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law and neither may prevail because of the failure of the other to discharge its burden. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). When the trial court grants one and

---

[2] In 2009, the Texas Legislature repealed the Texas Probate Code effective January 1, 2014, and recodified the statutes as the Texas Estates Code. *See* Act of May 26, 2009, 81st Leg., R.S., ch. 680, §§ 1, 10(a), 2009 Tex. Gen. Laws 1512, 1731-32. The applicable sections of the Probate Code at the time of Charles's death were not altered by the Estates Code.

denies the other, as here, the reviewing court considers the summary judgment evidence presented by both sides, determines all questions presented, and if the reviewing court determines that the trial court erred, renders the judgment the trial court should have rendered. *Canyon Reg'l Water Auth. v. Guadalupe-Blanco River Auth.*, 258 S.W.3d 613, 616 (Tex. 2008); *Mid-Century Ins. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007); *Texas Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 648 (Tex. 2004).

APPLICABLE LAW

When interpreting a will, the primary focus of the court is the determination of the testator's intent, as reflected in the will as a whole, and the effectuation of that intent as far as is legally possible. *Hysaw v. Dawkins*, 483 S.W.3d 1, 7 (Tex. 2016); *Sellers v. Powers*, 426 S.W.2d 533, 536 (Tex. 1968). The intent must be drawn from the will, not the will from the intent. *Hyshaw*, 483 S.W.3d at 7. Ascertaining intent from the four corners of a will requires careful examination of the words the testator chose and the sense in which the words were used by the testator is the ultimate criterion. *Id.* Words and phrases must be construed together and in context, not in isolation. *Id.* at 13. A court should focus on the meaning of the words actually used by the testator and not on what he intended to write. *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000).

ANALYSIS

Sullivan alleged he was entitled to summary judgment because the second paragraph of Charles's will created a life estate only and the remaining paragraphs of the will did not establish a remainder interest or dispose of one hundred percent of the residual estate. We agree.

7

The third paragraph of Charles's will, the survivor paragraph, provided three contingencies to effectuate a survival clause, none of which occurred. One, Juanita did not predecease Charles. Two, she did not die in an accident or a disaster with Charles. And, three, she survived Charles by more than ninety days. Thus, without any of the contingencies having occurred, the third paragraph became moot—thereby effectively distributing nothing to the named contingent beneficiaries, i.e., Sherry and the First Baptist Church. As such, it does not function to establish either a remainder interest or dispose of any residual interest. Because the third paragraph does not bear on the disposition of any residual interest, it does not pass title to the beneficiaries named in the trial court's judgment. While the fourth paragraph, the residuary paragraph, does dispose of forty percent of any residual estate (twenty percent to Christina and twenty percent to Lisa), it makes no provision for the remaining sixty percent, thereby creating a partial intestacy.

Although Sullivan acknowledges that the law does not favor the construction of a will that results in partial intestacy; *Farah v. First Nat'l Bank*, 624 S.W.2d 341, 346 (Tex. App.—Fort Worth 1981, writ ref'd n.r.e.), when a residuary clause fails, the property as to which it fails passes by intestacy under the laws of descent and distribution. *See id.* The presumption against intestacy must yield to a construction which results in partial intestacy when, as here, the testator has failed, by design or otherwise, to make a complete disposition of his property. *Van Hoose v. Moore*, 441 S.W.2d 597, 604 (Tex. Civ. App.—Amarillo 1969, writ ref'd n.r.e.). Accordingly, because the will left sixty percent of the residual estate unaccounted for—that portion of Charles's estate passed according to the laws of intestate succession.

8

By way of a counter-argument, Sherry argues that when the third and fourth paragraphs are read together, it results in a one hundred percent distribution of Charles's estate—fifty percent to her, ten percent to the First Baptist Church, twenty percent to Christina, and twenty percent to Lisa. Sherry's interpretation, however, completely ignores the plain and unambiguous meaning of the three contingencies set forth in the introductory sentence of the third paragraph, none of which occurred.

Sherry also argues that the "remaindermen hereinafter named" appearing in the second paragraph of Charles's will are identified in the third and fourth paragraphs. She maintains that in order to avoid partial intestacy, she, the First Baptist Church, Christina, and Lisa are those "remaindermen." However, we have found that she and the First Baptist take nothing by way of a direct bequest under Charles's will because none of the three named contingencies ever occurred. Sherry and the First Baptist Church were merely contingent beneficiaries should one of those three contingencies occur; they were not the successors to the "remainder" interest following Juanita's life estate. When a testator intends to create a remainder in another following a life estate, words such as "at his death" denote the time when the right of possession and enjoyment of the estate begins. *Benson v. Greenville Nat'l Exchange Bank*, 253 S.W.2d 918, 921 (Tex. Civ. App.—Texarkana 1952, writ ref'd n.r.e.). Notwithstanding Charles's use of the phrase "remaindermen hereinafter named" in the second paragraph, none were named. As a result, the remainder interest following termination of Juanita's life estate remained part of Charles's estate and passed according to the terms and provisions of the fourth paragraph of his will. That is, twenty percent passed to Christina, twenty percent passed

9

to Lisa, and the remaining sixty percent passed according to the laws of intestate succession.

The Bailey County acreage was purchased during the marriage of Charles and Juanita and, as such, it was community property.[3] Upon Charles's death, one-half of that property vested in Juanita outright as her community share. At the same time, Charles's one-half community property interest passed to Juanita, as a life estate, pursuant to the second paragraph of Charles's will. Upon Juanita's death, the remainder interest (i.e., the one-half interest that was Juanita's life-estate interest) reverted to his estate. Being a residual interest, forty percent of that interest then passed to Christina and Lisa pursuant to the residual clause (paragraph four) of his will. Because Charles's will did not provide for any further distribution of his residual estate, a partial intestacy was created with respect to the remaining sixty percent. *See Carr v. Rogers,* 383 S.W.2d 383, 384 (Tex. 1964) (holding that when a residuary clause fails, whether in whole or in part, the property as to which it fails passes by intestacy, under the laws of descent and distribution); *Renaud v. Renaud*, 707 S.W.2d 750 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.) (holding same).

Therefore, as it pertains to the Bailey County property in its entirety, based on the laws of intestate succession, the four corners of Charles's will, and the words used in the relevant paragraphs of his will, upon Juanita's death, the Bailey County property was owned as follows:

---

[3] *See* TEX. FAM. CODE ANN. § 3.002 (West 2006).

(1) Fifty percent (50%) by the estate of Juanita Gibson, as her share of the community property upon dissolution of the marriage by the death of Charles Gibson;

(2) Ten percent (10%) by Christina Michelle Wortham, or her heirs, as her share of the distribution of residual estate of Charles Gibson (twenty percent of Charles Gibson's fifty percent (50%) community property interest);

(3) Ten percent (10%) by Lisa Marie Scott, or her heirs, as her share of the distribution of residual estate of Charles Gibson (twenty percent of Charles Gibson's fifty percent (50%) community property interest); and

(4) Thirty percent (30%) by the heirs of Charles Gibson as determined by the laws of intestate succession.[4]

Because this distribution differs from that contained in the summary judgment of the trial court, we conclude the trial court erred in granting Sherry's amended motion for summary judgment. Issue one is sustained.

By his second issue, Sullivan contends that Sherry's suit was barred by the limitation provisions contained in section 256.204 of the Texas Estates Code. *See* TEX. ESTATES CODE § 256.204 (West 2014). This provision provides that a suit to contest the validity of a will must be brought no later than the second anniversary of the date the will was admitted to probate. The fallacy in this argument is that this is not a will contest case. Sullivan does not seek to invalidate or set aside the will in question. Instead, this is a simply declaratory judgment proceeding, seeking a proper construction of the provisions

---

[4] Appellant contends that Charles Gibson's heirs should be determined according to the provisions of sections 201.002 (separate estate interest) and 201.003 (community estate interest) of the Texas Estates Code. *See* TEX. ESTATES CODE § 201.002-003 (West 2014). Because the distribution provided by these two statutory provisions is not identical, it is critical to determine whether the residuary interest vested during marriage and was community property, or whether it vested after termination of the marriage and was separate property. Sherry adopted a construction of the will that did not contemplate a partial intestacy; therefore, these issues were not briefed. Because fact questions exist concerning the nature of the remainder interest created and the determination of the Charles's heirs under the law of descent and distribution, we do not reach the question of which section of the Texas Estates Code should apply in this case.

11

of a valid will—the very same cause of action originally brought by Sullivan as the plaintiff in this cause of action. As such, issue two is overruled.

CONCLUSION

The trial court's *Final Summary Judgment* is reversed in its entirety and judgment is hereby rendered, in part, declaring that this proceeding is not barred by limitations and that, upon Juanita's death, the Bailey County property was owned in the percentages set forth hereinabove. Additionally, this cause is remanded to the trial court for further proceedings consistent with this opinion to determine Charles's proper heirs under the laws of intestacy, as well as the award of attorney's fees.

Patrick A. Pirtle
Justice

Campbell, J., dissenting