# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00609-CV

**Burger Nation, LLC, Appellant**

**v.**

**Wukasch Properties, Ltd., LLP, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
NO. D-1-GN-12-002160, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant Burger Nation, LLC, signed an agreement to lease from Wukasch Properties, Ltd., LLP, two suites, 2328 Guadalupe and 2330 Guadalupe (the Leased Premises), in the Varsity Building in Austin. Burger Nation subsequently sued Wukasch Properties asserting causes of action for fraudulent inducement, fraud in a real-estate transaction, and breach of contract arising out of its contention that the building's electrical system was defective and inadequate to supply normal electric service to the Leased Premises. The trial court granted Wukasch Properties's motion for summary judgment and rendered judgment that Burger Nation take nothing by its claims. In two issues on appeal, Burger Nation asserts that (1) summary judgment was improper because there were fact issues regarding whether the building's electrical system was defective, and (2) the trial court erred in excluding the affidavits of two of Burger Nation's expert witnesses. We will affirm.

The lease agreement between Wukasch Properties, the lessor, and Burger Nation, the lessee, provides:

> 11.1  Lessor represents to Lessee that Lessor has no current actual knowledge of any material structural, mechanical, plumbing or other building system defect in or affecting the Leased Premises as of the Effective Date.  For purposes of the foregoing sentence, the "knowledge" of Lessor is limited to the current actual knowledge of only Don K. Wukasch and Walter Wukasch, II, general partners of Lessor.

In its lawsuit, Burger Nation asserted that Wukasch Properties breached section 11.1 of the lease because the electrical system in the Leased Premises was defective and Don Wukasch knew of this defect.[1]  Viewing the disputed and uncontroverted evidence in the light most favorable to Burger Nation as the non-movant, the record shows as follows.[2]  The Varsity Building is more than 75 years old.  In 2003 and 2004, Wukasch Properties performed a major renovation of the building, including changes to its electrical system.  After the renovation was completed, each of the two suites comprising the Leased Premises had a separate 200 amp electrical meter.  At the time of the renovations, the building's proposed electrical system and metering design were approved by the

_____

[1]  In the trial court, Burger Nation abandoned its claims of fraudulent inducement and fraud in a real-estate transaction.  In this appeal, Burger Nation challenges only the trial court's summary judgment on its breach-of-contract claim and the exclusion of its expert-witness affidavits.

[2]  The standards for reviewing a summary judgment are well established and undisputed on appeal. *See, e.g.*, *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *see also Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also* Tex. R. Civ. P. 166a.  Accordingly, we need not repeat them for purposes of our analysis.

City of Austin and the city's electric utility, Austin Energy, as a condition of obtaining building permits. The electrical meters for the Leased Premises were installed in accordance with those approved plans. After the renovations were completed, the Leased Premises were occupied by a tenant who operated its business using the two 200 amp meters with approval of the City. The same two electrical meters used by the previous tenant remain and are available for use by Burger Nation. Another of the tenants in the Varsity Building operates a restaurant in two suites with the addresses 2324 Guadalupe and 2326 Guadalupe. These suites have an electrical system identical to that of the Leased Premises, i.e., two separate 200 amp meters, one in each suite. It is undisputed that the two 200 amp meters in the Leased Premises are still approved by the City and are available for Burger Nation's use.

In its brief, Burger Nation states that "if the electrical system serving a commercial building is in such a condition that a tenant cannot obtain service from the utility, then the system is 'defective.'" Burger Nation asserts that "the existing physical plant of the Varsity Building precludes electric service to the leased premises" and that Burger Nation "cannot enjoy the leased premises without electricity." The basis of Burger Nation's claim of a building-system defect is the City's refusal to grant Burger Nation's request to combine the two separate 200 amp meters for the Leased Premises into a single 400 amp meter. The City refused to approve the requested metering change based on its policy that making this change to the building's electrical system would require

3

construction of an electrical "vault."[3] The City informed Burger Nation that without construction of the "vault," no changes to the existing meter design would be approved.

It is undisputed that Burger Nation could have continued to use the existing power supply to the Leased Premises in the condition in which it existed when the lease was signed. The evidence conclusively established that at the time the lease was signed, the Varsity Building's electrical system was operative, was of a design approved by the City, was supporting another restaurant occupying adjacent suites in the building, and was available for Burger Nation's use. We are unpersuaded by Burger Nation's contention that Austin Energy's requirement that it build a "vault" in order to make its desired alterations to the power supply in the Leased Premises rendered the building's electrical system "defective." Absent from the summary-judgment record is any evidence that creates a fact issue regarding whether the Varsity Building's electrical system was defective. We overrule Burger Nation's first appellate issue.

With regard to the trial court's exclusion of the affidavits proffered by Burger Nation, any error in such exclusion was harmless because neither affidavit contains any evidence that the Leased Premises did not have an operating electrical power supply approved by the City available for Burger Nation to use. The affidavit of Gregory W. Miller, P.E., states that he is familiar with "the installation or upgrade of electrical power distribution systems." Miller averred that any "remodel or upgrade of existing electrical facilities would trigger the requirement for those

---

[3] According to Austin Energy's Design Criteria, a "vault" is a securable concrete room or enclosure installed by the customer on the customer's property. The vault is to be secured with an Austin Energy lock and accessible only to Austin Energy personnel. It is used for housing Austin Energy equipment and transformers used to supply power to the customer's building.

4

grandfathered facilities to be brought into compliance with current national and local electrical codes" and that Burger Nation's request to reconfigure the meters in the Leased Premises did not "seek or require to exceed or overload the installed capacity of the existing Austin Energy utility service lines." These opinions do not constitute any evidence creating a fact issue as to whether the Varsity Building's electrical system was defective. Nor does Miller's affidavit controvert the undisputed evidence that the Leased Premises had electrical service available to Burger Nation. Rather, Miller simply confirms that any changes to the existing building meters would require building the "vault" that the City had informed Burger Nation would be needed in order to make any changes to the Varsity Building's electrical system.

Likewise, in his affidavit Raymond Thaddeus Henry, Jr., P.E., opines that, as of 2011, when one of the Varsity Building's tenants remodeled its leased space, the resulting electric-service installation was not in compliance with the applicable version of the Austin Energy Design Criteria in effect at that time. The summary-judgment evidence, however, demonstrates that the electrical service to the Varsity Building as reconfigured by the 2011 remodel had been approved by the City at that time, that power was being provided to all the tenants of that building, and that power would be provided to Burger Nation through the meters as presently configured. The fact that Burger Nation's desired alterations to the electrical system would cause the City to require the construction of upgrades—i.e., building a "vault"—does not render the system as it existed "defective."

We also observe that the lease itself provides that the Lessee and the Lessor expressly disclaimed any implied warranty that the Leased Premises would be suitable for the Lessee's intended commercial purpose and that the intention of the parties to the lease was that the Leased

5

Premises would be leased "in their then condition and state of repair 'as is,' 'where is,' and 'with all faults.'" Thus, any error in excluding Miller's and Henry's affidavits was harmless. We overrule Burger Nation's second appellate issue.

## CONCLUSION

We affirm the trial court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed:   October 29, 2014

6